Good morning, your honors. Charles Nickel, appearing for the petitioner. This is a case which is a petition for review of the Board of Immigration Appeals' summary affirmance of the immigration judge's denial of a Guatemalan asylum case. On the petition for review before this court, they were challenging the use of the streamlining section of HCFR to this case where they affirm a decision without opinion, and also challenging the judge's adverse credibility finding and his finding that he would not qualify for asylum. The facts of the case are fairly simple. A Guatemalan who at the age of approximately 21 years old, there were three brothers in his family who had a mutual friend, Enrique Rodas, who the army apparently found with a weapon. It's not really confirmed whether or not he actually had a weapon, but they arrested him on that, and he was later found to have been killed. Subsequent to the murder of their friend by the Guatemalan military, the military came to the petitioner's home and took two of the brothers, who were friends of Enrique Rodas, and asked for the petitioner who was not there. The two brothers were taken out by the army, severely beaten, tortured, and one of them suffered permanent brain damage. He has a problem with his nervous system, epilepsy, and also memory loss. The other brother who survived the beating went to Mexico and never returned, and the petitioner, within approximately a month of this incident, came to the United States. He was here for a couple of years before he filed for asylum. He filed through a notary person who filled out a claim and said the claim was based upon fear from the guerrillas, and this was a false statement. He was not interviewed for many years until he went to the asylum office. About six years after that application was filled out, he reviewed the application and corrected it. He put an amendment to the application, and that is what he testified to at the asylum office. When he went before the immigration judge, the judge found that this was a convenient change because he said since the 1996 peace accord, you're fearing now persecution from the government. However, he found that all of his testimony was completely consistent with his revised application, and he never provided false testimony before the agency on the application. Why isn't that an adequate indication of implausibility? There are many people who come over here, and it's a problem where people fill out an asylum. They're not required to be an attorney. Anyone does this. I know that, but there is a really big difference between persecution by guerrillas, which will happen to make you eligible for asylum at the time that you apply, and persecution by the government, military, which would happen to make you eligible for asylum six or seven years later because country conditions have changed. Yeah. It's unfortunate that this happens, but people sign applications without having them. This person did not speak English. He came here. Often people sign blank applications that have it filled out by someone and say, this is what you do to go get your papers. You can get your work authorization, and here you go. And then when they have to have the matter translated to them, they often find that it's a bogus application. If he were actually to make a bogus claim, I've never seen one where there's been an adverse credibility finding, and the person did not at least allege that he himself was tortured or beaten. Here, he could have had a stronger claim. I think it's still a sufficient claim because he personally was never beaten by the military or taken into custody. He doesn't have to show that to win asylum. He just has to show that a person in his circumstances would have a reasonable and well-founded fear of persecution. And I think he has that, you know, considering that one of his brothers was beaten and suffered terrible permanent damage, and the other one was beaten and left and never returned. And it was based because they had a friend who was suspected of being a guerrilla that he's made a claim. So I don't think it's, you know, I certainly think that, you know, the fact that he never testified to any of that before the service, and the fact that it was very timely that he withdrew that and basically stated the facts as they were, would not support an adverse credibility finding in this. Was there, in terms of the description of what had occurred, his description of what had occurred to him in Guatemala, other than the identification of the entity responsible for persecution, were there any other substantial differences? No. I mean, when he described the activities he engaged in. The immigration judge, he made a finding that his testimony was consistent with his amended application. That's not my question. You've laid out the events, and apparently he files a written application for asylum and identifies his persecutor as the guerrillas, right? Yes. He then later files an amended one saying that was incorrect, the notario got it wrong, the persecutor was actually government military forces. Am I correct so far? Right. My question is, assuming that can be put aside, and it's just assumed for the purpose of the question, was there anything else about the original application in terms of its description of events that was changed by the supplemental statement and the testimony? No. No. One of the issues. It goes to the heart of the claim is who did the persecuting. Yes. I mean, it is a. So the same thing could have happened if it had been the guerrillas. I mean, the guerrillas could have hurt the brother just as much as the military, right? Right. And his understanding was that, I mean, that the notaries at that time were basically saying that you had to have persecution from the guerrillas if it was pursued from the government. I understand because that's what would have gotten asylum. But I mean, that's just playing a game with the system, if not actually lying, isn't it? I mean, that's even worse. If you say, ah, well, the notary is just trying to get me asylum now, so it doesn't really make any difference who did the persecuting. It'll just pick the entity that'll get me there now. Right. I mean, it's not the best circumstances to have. But that is his claim. And I think that, you know, it's reasonable. And I think that this does happen. And I think it's one of the reasons why it was wrong for the board. Perhaps unfortunately it happened. It was wrong for the board to do a summary affirmation on this because even with Falcone Carice, which said that it upholded their streamlining decision-making process, that was for most, in fact all forms of discretionary relief have been barred for judicial review with the exception of asylum. And they've upheld the streamlining provisions for those forms of relief. However, they've carved out an exception for asylum. And under that regulation, where there are novel issues of fact, such as a credibility finding, we don't know what the board made its decision on. The board basically gave a rubber stamp. Well, we know it did. It made it on the basis of what the I.J. said. So the answer falls on that. I think that's not going to get you anywhere under Falcone Carice. Well, they can say that it's actually they only confirmed the results below. They could have differences with the way that the I.J. reached his decision. And in this case, I think they should. Okay. You want to save the rest of your time? Yeah, I'll save the last 55 seconds. Thank you. May it please the Court. James Grimes for the Attorney General. Your Honors, before this Court, Petitioner Pereira is not entitled to relief because he cannot show the record compels reversal. And, of course, the first problem with his case is he signed his first application under a penalty of perjury, and that application is demonstrably different than the claim he later raised. Now, he has in his brief before this Court this morning argued that the person who helped him prepare that application was a notario. And I invite the Court's attention to pages 121 through 123 of the record, in which the immigration judge and counsel have a discussion about the fact that there's no evidence that Mr. Castellon was a notario and the fact that Mr. Pereira testified, or at least indicated at page 113 and again at page 125, that Mr. Castellon was an attorney. And as the immigration judge said – Well, I guess our – we've got Ninth Circuit case law that says he was, and not only was, but was rather notorious notario. And the I.J. didn't appear to take any account of the explanation that Pereira gave for having changed his position. I think he did take account of that, Your Honor, and found that that – his explanation was suspicious. And I think this goes to a point that was raised earlier, that there are – the remainder of the application has the same substance as his present claim. You have the similarities with respect to his support for the PDC. You have the claim that his cousin, Victor, was killed. So obviously he must have told the person who prepared it those facts, and it stands to reason if he told them those facts, he must have told them the other facts that he now claims are actually not correct. And the second problem – Didn't he testify that his language – English language skills were limited at that point in time? He did say that. But my point is that he must have told the person who prepared it something, and the rest of the things that he told the preparer are substantially similar to what he's now saying is the case. And so if he told them those things and those are correct, the only thing that's different is the heart of the case. And, of course, then you have the problem of timing. His first claim was regarding the guerrillas based on his political support of a political party, and then only after the peace accords does he change his claim to say, oh, well, now my fear is of the government because it was alleged that I was helping guerrillas. So really the question is, is that suspicious set of circumstances – and I think the immigration judge characterized it as suspicious at page 65 – is that suspicious set of circumstances so compelling that we're forced to believe that what he's later saying is correct? And I don't believe that that is the case. And because that's not the case, the immigration judge correctly looked to whether there was corroboration. And as this Court has said, if the immigration judge has a reason to question credibility, and certainly there was a reason to question credibility here because you have two different claims, then the immigration judge can expect the applicant to provide some reasonably available corroborating evidence or explain why he can't provide it. Why doesn't our decision in Alvarez-Horta provide that? Why doesn't – I'm sorry. I'm not sure I understand your question. Why doesn't the Ninth Circuit's decision in Alvarez-Horta supply that corroboration? I'm not familiar what the corroboration was that was supplied by it. That's the case that Judge Reimer referred to where Castillon, the document preparer in this case, and the document preparer in that case is, A, identified as a notario and a rather notorious one who inaccurately fills out these applications. Why, for our purposes, shouldn't that provide some level of corroboration? That goes to indication of whether or not the first application was not from Mr. Pereira. That goes to whether or not that person made it up. The question of corroboration goes to whether or not his present claim is supported by some sort of evidence. There is – Well, what the I.J. pointed to and what Judge Reimer is quite properly asked about is the change from the identification of the group responsible for persecution. It was changed from guerrilla to government. Yes, Your Honor. The Petitioner's explanation for that was he had limited English, he relied upon a document preparer, the document preparer got it wrong with respect to this particular item. That was his explanation. The I.J. chose not to believe that explanation. That's correct. And required corroboration. That's correct. Why, for this panel's purposes, shouldn't the Alvarez-Huerta case supply that corroboration? Because that only goes – because of two things. First, the rest of the application is similar. So he must have told Mr. Castellon all of that information. And so it stands to reason that he would have told him the other information about who the persecutor was. Did I.J. rely upon what you just described? Yes, I believe at page 59 of the record, the immigration judge pointed out the fact that those similarities are there. And then he characterized – then he said, well, okay, this is very suspicious that he would come forward after the peace corps are signed and say, well, I have a new claim. And so it was appropriate for him to ask for corroboration. The preparer certainly knew there was a problem with his case. He said as much at page 213 in his second declaration. He recognized that. And it was in his power to attempt to cure that problem. And we witnessed the fact that his parents supplied him with a medical report about his brother. And when asked why his parents couldn't provide him with a letter at page 127, he said, I don't know. He said they were afraid to get other medical evidence. But when specifically asked, couldn't they just give you a letter? He said, and then asked, why couldn't they? He said, I don't know. What are you referring to the corroboration of? What point. His present claim, Your Honor, that the government, rather than the guerrillas, was the entity that was seeking to persecute him. And what was he supposed to supply? Any sort of evidence to support his claim. A letter from his mother saying, my kid made a mistake, it really was the government? That would have certainly been an easy thing to do. Or his brother, whom he testified at page 100, now lives in Mexico. He could have supplied a letter from, he could have asked about that. He never explained why he didn't provide any sort of corroborating evidence. His only explanation was, I don't know, which is no explanation at all. Not exactly true. I'm sorry, Your Honor? That's not exactly true. He offered an explanation about this notario. He didn't supply any independent corroborating evidence to support his present claim. Really, the question is, is this a suspicious set of circumstances? Did the immigration judge have a reason to expect there to be corroboration? Did he have a reason to question this applicant's credibility? There is a difference. There is, in this record, a difference that is a valid ground on which the immigration judge could question his credibility. So you have the obvious credibility problem, you have the suspicious set of circumstances, and you have Pereira's failure to corroborate his claim despite the fact that he's been here since 1990 and he knew that there was a problem. And his failure to even attempt to corroborate his claim makes it all the more or less likely that his claim is correct. And then, of course, you have the fact that he was ever beaten, detained, questioned, abused, the fact that his parents remain in Guatemala, the fact that there's no evidence that former supporters of his political party or former guerrillas are now being abused. In fact, there's evidence that former guerrillas have now integrated themselves into the political life and have been elected to public office in Guatemala. So those country conditions evidence, which the immigration judge relied on at page 69, certainly support the immigration judge's decision. So the point here is Pereira has the burden of proof below, he has the burden of proof here, and he has not met that burden of proof. And because he has not met that burden of proof and has not shown that the record compels reversal, there's nothing that compels us or this Court to believe that he's now telling the truth, unless there are any. Yes, Your Honor. Can I ask a question, and if you know this, fine. If you don't know this, I read in the newspaper the other day that the State Department has issued a travel advisory with regard to Guatemala. All I know about is ñ I don't know anything about that, Your Honor. I know about the extension of protected service, protected status for Honduras to make arrival, I believe. I don't know. I can't answer Your Honor's question. Thank you. Thank you. So we ask that you deny the petition for review. Thank you.  Thank you, Mr. Rimes. Mr. Snell. Thank you, Your Honor. Just briefly, with regard to corroboration, this Court has previously held in Bolanos Hernandez v. INS that it recognized the difficulties that asylum applicants often have in gathering corroboration of their claims of persecution and that persecutors are hardly likely to provide affidavits of the mistreatment. He would not be able to get a record, an official record, certainly from the Guatemalan government regarding ñ What was so tough about getting something from the brother in Mexico saying, you know, no, it was the military? He had difficulty. He said he asked, he didn't get it. I mean, that was his explanation. And I don't even know if his parents know how to write. Well, I understand, but you don't have to accept that at space value. I'm just saying, what's so tough about doing it? I mean, the guy's not in any danger. He's in Mexico. He could have said, yeah, no, it was clearly the military. It wasn't the guerrillas. There could be other factors. It could be because it was the guerrillas. Yeah. I mean, that could be one reason. And he didn't want to perjure himself. Well, that's ñ I mean, there are any number of reasons. I don't know what ñ how his relationship is with his brother or that they maintained real close contact. He did request from his family members. He didn't receive anything other than the medical report regarding the problems that his brother had after the beating. And there is also information in the State Department report as far as mentioning that the police still have killed people in detention. And that was presented. The judge basically didn't find that to be of importance, but it was certainly something that he should have considered because it showed an ongoing practice, which was identical to what this petitioner had claimed. Okay. Thank you. Great. Thank you, counsel. The matter just argued will be submitted. And we'll next hear Silva Cento.
judges: Rymer, Hawkins Brewster